IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Frank Crosby,                        )
                                     )    Civil Action No. 8:12-cv-00681-JMC-JDA
            Plaintiff,               )
                                     )
      vs.                            )    **REPORT AND RECOMMENDATION**
                                     )        **OF MAGISTRATE JUDGE**
United Parcel Service Inc.,          )
                                     )
            Defendant.               )
                                     )

     This matter is before the Court on Defendant's motion for summary judgment.
[Doc. 41.]  Plaintiff brings this case pursuant to Title VII of the Civil Rights Act of 1964, as
amended ("Title VII").   Pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(A) and Local
Civil Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases
are referred to a United States Magistrate Judge for consideration.

     Plaintiff, an African-American male, filed this action on March 8, 2012 and filed an
Amended Complaint on April 19, 2013, generally alleging race discrimination, retaliation,
and hostile work environment claims.  [Docs. 1, 32.]  On August 16, 2013, Defendant filed
a motion for summary judgment.   [Doc. 41.]   Plaintiff filed a response and amended
response on October 2, 2013 [Docs. 47, 48, 52], and Defendant filed a reply on October
15, 2013 [Doc. 58].  Accordingly, the motion for summary judgment is ripe for review.

<u>**BACKGROUND**</u>

**Plaintiff's Work History with Defendant**

     Plaintiff began working for Defendant part time in August 1996 in preload.  [Doc. 41-
2 at 3:18–25.]  Plaintiff began working full time for Defendant in August 2000.  [*Id.* at

4:1–9.]   Additionally, Plaintiff has been the local shop steward for the International Brotherhood of Teamsters ("the Union") since mid-2010.[1]   [*Id.* at 5:16–22.]

**Allegations of Discrimination**

In 2006, Plaintiff called Defendant's Help Line to report that an employee with less seniority than Plaintiff had been placed above Plaintiff on the seniority list.  [Doc. 52-1 at 9:7–25.]  Plaintiff believed this constituted racial discrimination.  [*Id.* at 10:5–7.]  Plaintiff also filed a grievance regarding the seniority issue.  [*Id.* at 10:23–24; Doc. 41-8 at 4[2].]  As a result of the grievance, Plaintiff was placed ahead of his coworker on the seniority list and remains higher on the seniority list.  [Doc. 52-1 at 16:16–23.]

Plaintiff alleges he was discriminated against in 2008 when he was told to continue driving an unsafe vehicle.  [*Id.* at 25:21–26:19.]  Plaintiff had a flat tire and was instructed to drive the vehicle with a flat tire.  [*Id.*]  Plaintiff alleges a white driver had a flat tire in 2011, and Defendant did not tell him to continue driving the unsafe vehicle.  [*Id.* at 27:7–10.]

In August 2010, Plaintiff became dehydrated on his route but was told not to seek medical treatment.  [*Id.* at 7:13–25.]  Plaintiff was nauseated and dizzy and did not think

---

[1] The Union and Defendant have entered into a collective bargaining agreement known as the National Master United Parcel Service Agreement ("the CBA").  [Doc. 41-4.]  The CBA covers all employees in the bargaining unit with regard to wages, hours, and other conditions of employment.  [*Id.* at Art. 1, § 1.]  The CBA includes a grievance procedure.  [*Id.* at Art. 49.]  Pursuant to the CBA, shop stewards play a role in resolving disputes between Defendant and employees by investigating and presenting grievances to Defendant.  [*Id.* at Art. 4.]

[2] Although this grievance is dated January 25, 2008, it states that the matter was corrected over a year before this grievance was filed.  [Doc. 41-8 at 4.]  Additionally, Plaintiff testified that the January 25, 2008 grievance was the second grievance he filed with respect to the seniority issue.  [Doc. 52-1 at 11:18–24.]

2

he could drive, but when he asked to go to the hospital, he was told to drive the package car back to the center.  [*Id.*]

Plaintiff further alleges he was discriminated against based on his race by being treated differently than white employees with respect to having a helper on his runs.  [*Id.* at 21:4–22:1.]  He also alleges he was discriminated against based on his race when he was not paid for attending meetings as the shop steward when the other shop steward, who is white, was paid for those meetings.  [*Id.* at 22:18–25:15.]

**Plaintiff's November 2010 Termination**

Plaintiff was terminated in November 2010 for gross insubordination and dishonesty based on conduct that occurred on November 23, 2010.  [Doc. 41-11.]  On November 23, 2010, Plaintiff was looking for Jackie Davis ("Davis") to find out who Plaintiff's helper was going to be while Davis was looking for Plaintiff to ask him to pull out of the building.  [Doc. 41-9 at 6:3–7.]  Davis asked Plaintiff to pull his car out of the building, and Plaintiff pulled out a booklet to take notes, asking Davis for the meet point for his helper.  [*Id.* at 6:10–14.]  Davis was instructing Plaintiff to pull out of the building because Plaintiff was blocking three cars, which had the potential to have between twenty and forty late air packages.  [*Id.* at 8:1–4.]  Davis testified that it was already a heated time of the morning because they were coming down late, and he was trying to get people out of the building, and then he had a heated conversation with Plaintiff about pulling out of the building to let the other cars out and Plaintiff asked multiple times about his helper.  [*Id.* at 10:15–25.]

Davis reported the incident to Chris Roseberry ("Roseberry"), center manager, and Will Fletcher ("Fletcher"), on-car supervisor.  [*Id.* at 9:15–21.]  Roseberry talked to Davis

about the incident and also talked to Don Mack ("Mack"), the driver who parked next to Plaintiff. [Doc. 41-10 at 4:24–5:23.] Mack corroborated Davis's story and said that Davis asked Plaintiff to pull out of the building but Plaintiff was being stubborn and would not pull out of the building. [*Id.* at 5:5–19.]

Plaintiff filed a grievance challenging the termination [Doc. 41-8 at 11], and, after a hearing on December 1, 2010, his termination was reduced to a suspension all time served with Plaintiff returning to work on December 2, 2010 [Doc. 41-12].

**Plaintiff's March 2011 Termination**

Plaintiff was terminated in March 2011 for dishonesty and getting paid while not performing work because, on March 24, 2011, Plaintiff changed his start time to 8:30 a.m. from 9:00 a.m. without management approval.[3] [Doc. 41-10 at 11:7–12; *see* Doc. 41-16 at 3.] Plaintiff filed a grievance challenging the termination [Doc. 41-16 at 3], and, after a hearing, his termination was reduced to a time served suspension [Doc. 41-17].

**Plaintiff's 2011 EEOC Charge**

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 11, 2011 ("the 2011 Charge"). [Doc. 41-18.] In the 2011 Charge, Plaintiff alleged he complained to supervisors that African-American employees were treated unfairly and held to a higher standard than similarly situated white coworkers. [*Id.* at 2.] Plaintiff also alleged that Fletcher's treatment toward Plaintiff when he yelled and slammed his fist on the desk was different from Fletcher's disagreements with white

---

[3]On March 22, 2011, Plaintiff was with Fletcher and Steve Kelly, another shop steward, when Fletcher slammed his hand on the desk next to Plaintiff. [*See* Doc. 41-16 at 2.] Plaintiff filed a grievance related to this incident, indicating he felt it created a hostile work environment. [*Id.*]

employees. [*Id.*] Plaintiff further contended that he was pulled out of service after filing a grievance against Fletcher and then terminated the next day. [*Id.*] After receiving a right to sue from the EEOC, Plaintiff filed this action on March 8, 2012, alleging race discrimination, retaliation, and hostile work environment claims pursuant to Title VII. [Doc. 1.]

**Plaintiff's 2013 EEOC Charge**

Plaintiff filed a second Charge of Discrimination with the EEOC on February 14, 2013 ("the 2013 Charge"). [Doc. 41-19.] In the 2013 Charge, Plaintiff alleged he was given a written counseling for working over time after he was instructed to work overtime. [*Id.* at 2.] Plaintiff further alleged that his run was cut around April 18, 2012, resulting in a thirty to forty day layoff and then his work was given to a less senior driver. [*Id.*] Plaintiff contended these actions were in retaliation for the 2011 Charge and this pending lawsuit. [*Id.*] After receiving the notice of right to sue from the EEOC, Plaintiff filed an Amended Complaint in this action on April 19, 2013. [Doc. 32.]

## APPLICABLE LAW

**Summary Judgment Standard**

Rule 56 states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such

5

that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations

6

(including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## **DISCUSSION**

**Race Discrimination Claim**

Defendant argues Plaintiff's race discrimination claim must fail because Plaintiff is unable to produce any evidence demonstrating discrimination on the basis of his race. [Doc. 41-1 at 12–24.] More specifically, Defendant argues Plaintiff is unable to present any direct evidence of discrimination; Plaintiff cannot establish a prima facie case of discrimination based on his November 2010 or March 2011 termination because he cannot identify any comparator outside his protected class who engaged in similar misconduct but who received less severe discipline; Plaintiff cannot establish a prima facie case of discrimination based on being denied compensation for attending local union hearings because he cannot identify any individual outside his protected class who was compensated for attending the hearings; Plaintiff's discrimination claims based on being prohibited from going to the hospital, being forced to drive an unsafe vehicle, and having his seniority disregarded are time-barred; and Plaintiff failed to exhaust his allegations regarding excessive workloads and being forced to drive an unsafe vehicle. [*Id.*; Doc. 58.]

7

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In 1991, Congress amended Title VII to include that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." *Id.* § 2000e-2(m).

As the Fourth Circuit Court of Appeals has explained in the wake of *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), a Title VII plaintiff may "avert summary judgment . . . through two avenues of proof." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004). First, a plaintiff may survive a motion for summary judgment "by presenting direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor . . . motivated the employer's adverse employment decision." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005). The Fourth Circuit defines "direct evidence" as evidence that the employer "announced, admitted, or otherwise indicated that [the forbidden consideration] was a determining factor . . . ." *Cline v. Roadway Express, Inc.*, 689 F.2d 481, 485 (4th Cir. 1982) (citing *Spagnuolo v. Whirlpool Corp.*, 641 F.2d 1109, 1113 (4th Cir. 1981)). In other words, direct evidence is "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Fuller v. Phipps*, 67 F.3d 1137, 1142 (4th Cir. 1995), *abrogated on other grounds by Desert Palace*, 539 U.S. 90. Circumstantial evidence may "includ[e] but [is] not limited to proof of the

8

claimant's general qualifications, from which the inference of . . . discrimination may rationally be drawn independently of any presumption [of discrimination]." *Cline*, 689 F.2d at 485 (footnote omitted).  To demonstrate an unlawful employment practice in these so-called mixed-motive cases, a plaintiff "need only present sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence," that the impermissible factor was a motivating factor, i.e., "direct evidence of discrimination is not required in mixed-motive cases." *Desert Palace*, 539 U.S. at 101–02.

Alternatively, a plaintiff may proceed under the *McDonnell Douglas* "pretext" framework. *Id.* (quoting *Hill*, 354 F.3d at 285).  Under this framework, an employee must first prove a prima facie case of discrimination.[4] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  If the plaintiff succeeds, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action. *Id.*  By providing such an explanation, the employer rebuts the presumption of discrimination created by the prima facie case, and "[t]he presumption, having fulfilled its role of forcing the [employer] to come forward with some response, simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 510–11 (1993) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981)).  If the employer articulates a legitimate, nondiscriminatory reason, the burden shifts back to the employee to show that

---

[4] To establish a prima facie case of discrimination, a plaintiff must demonstrate (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was performing his job duties at a level that met the employer's legitimate expectations at the time of the adverse employment action; and (4) other employees who are not members of the protected class did not suffer the adverse employment action under similar circumstances.  *See Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 133 (4th Cir. 2002); *see also EEOC v. Sears Roebuck & Co.*, 243 F.3d 846, 851 n.2 (4th Cir. 2001) ("What is critical with respect to the fourth element is that the plaintiff demonstrate he was not hired (or fired or not promoted, etc.) 'under circumstances which give rise to an inference of unlawful discrimination.'" (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981))).

the articulated reason was actually a pretext for discrimination.  *McDonnell Douglas*, 411 U.S. at 804.

However, the Fourth Circuit has emphasized that, "[r]egardless of the type of evidence offered by a plaintiff as support for her discrimination claim (direct, circumstantial, or evidence of pretext), or whether she proceeds under a mixed-motive or single-motive theory, '[t]he ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination.'" *Hill*, 354 F.3d at 286 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153 (2000)).  Further, the court stated,

> To demonstrate such an intent to discriminate on the part of the employer, an individual alleging disparate treatment based upon a protected trait must produce sufficient evidence upon which one could find that "the protected trait . . . actually motivated the employer's decision." *Reeves*, 530 U.S. at 141, 120 S.Ct. 2097 (internal quotation marks omitted).  The protected trait "must have actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome." *Id.* (internal quotation marks and alterations omitted); *cf. Price Waterhouse* [*v. Hopkins*], 490 U.S. [228,] 277, 109 S. Ct. 1775 (O'Connor, J., concurring) (noting that "statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself [do not] suffice to satisfy the plaintiff's burden" of proving discrimination); *Koski v. Standex Int'l Corp.*, 307 F.3d 672, 678 (7th Cir. 2002) (noting that the pertinent inquiry is whether the decision maker, as opposed to other managers or subordinates, evaluated the aggrieved employee based upon discriminatory criteria).

*Id.*  Thus, whether a plaintiff proceeds under the first or second avenue of proof, the plaintiff's ultimate burden is to demonstrate the employer's adverse employment action was motivated, at least in part, by discrimination.

In this case, the Court must determine whether Plaintiff has demonstrated a genuine issue of material fact remains as to whether his seniority status being disregarded, his excessive workloads with no helper, his not being allowed to go to the hospital when he was dehydrated, his not being paid for attending local Union hearings, his being forced to drive an unsafe vehicle, and his November 2010 and March 2011 terminations[5] were motivated, at least in part, by race discrimination.  As stated, Defendant contends Plaintiff cannot establish a prima facie case of discrimination with respect to the terminations and being denied compensation for attending local Union hearings, any claims related to Plaintiff being prohibited from going to the hospital, being forced to drive an unsafe vehicle, and having his seniority disregarded are time barred,[6] and Plaintiff failed to exhaust any

---

[5]A review of the Amended Complaint reveals that these employment actions appear to be alleged as discriminatory in nature.  Moreover, in its memorandum in support of the motion for summary judgment, Defendant addressed these employment actions under the discrimination section, and Plaintiff likewise discussed these employment actions in the discrimination section of his response in opposition.  Accordingly, the Court addresses these employment actions as being brought under a claim of race discrimination.

[6]Defendant argues Plaintiff's claims regarding being prohibited from going to the hospital and being forced to drive an unsafe vehicle are time-barred.  [Doc. 41-1 at 20–22.]  The Court agrees.
    Before filing suit under Title VII, a plaintiff must exhaust his administrative remedies by filing a charge with the EEOC.  *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000) (citing *King v. Seaboard Coast Line R.R. Co.*, 538 F.2d 581, 583 (4th Cir. 1976)).  In South Carolina, the charge must be filed within 300 days after an "alleged unlawful employment practice" occurred. 42 U.S.C. § 2000e–5(e)(1); *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) (citing *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 439 (4th Cir. 1998)).  The failure to file a timely charge with the EEOC bars the claim in federal court. *McCullough v. Branch Banking & Trust Co.*, 35 F.3d 127, 131 (4th Cir. 1994) ("When the plaintiff fails to file such a complaint in a timely fashion with the EEOC, the claim is time-barred in federal court.").
    Plaintiff filed the 2011 Charge on July 11, 2011, and Plaintiff's claims that occurred more than 300 days before July 11, 2011 are beyond the limitations period of Title VII.  Therefore, all claims relating to employment actions that occurred before September 14, 2010 are time-barred.  Plaintiff alleges he was prohibited from going to the hospital when dehydrated in August 2010 [Doc. 52-1 at 22], was forced to drive an unsafe vehicle in 2008 [*id*. at 25–26], and his seniority was disregarded in 2004 or 2005 and 2008 [*id*. at 12, 20].  Accordingly, these claims are time-barred.  Plaintiff does not argue that these employment actions are not time barred, but instead argues that "these acts support the ongoing hostile work environment claim" and thus are actionable as to the hostile work environment claim.  [Doc. 52 at 13.]  The Court agrees. "Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability."  *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002).  Accordingly, the Court will consider these employment actions when it considers Plaintiffs hostile work environment claim but declines to consider them with respect to Plaintiff's discrimination claim because they are time barred.

claims related to excessive workloads and being forced to drive an unsafe vehicle.  [Doc.

41-1 at 12–24.]  Moreover, Defendant argues it had a legitimate, nondiscriminatory reason

to terminated Plaintiff in November 2010 and March 2011.  [*Id.* at 16–17, 18–19.]

### Terminations

With respect to Plaintiff's terminations, even assuming without deciding Plaintiff can

establish a prima facie case of race discrimination,[7] the Court agrees Defendant articulated

a legitimate, nondiscriminatory reason for these terminations, and Plaintiff has failed to

---

[7]As one court within the Fourth Circuit has noted, "[t]he relevance of the *McDonnell Douglas* scheme outside of the trial context is limited."  *Lerner v. Shinseki*, No. ELH-10-1109, 2011 WL 2414967, at *14 (D. Md. June 10, 2011).  The Fourth Circuit has observed,

> Notwithstanding the intricacies of proof schemes, the core of every Title VII case remains the same, necessitating resolution of "the ultimate question of discrimination *vel non.*" *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983). As the Supreme Court has explained, "[t]he ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Thus, "[c]ourts must . . . resist the temptation to become so entwined in the intricacies of the [ *McDonnell Douglas* ] proof scheme that they forget that the scheme exists solely to facilitate determination of 'the ultimate question of discrimination *vel non.*' " *Proud v. Stone*, 945 F.2d 796, 798 (4th Cir. 1991) (citation omitted).

*Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294–95 (4th Cir. 2010).  Further, the Supreme Court has stated,

> Where the defendant has done everything that would be required of him if the plaintiff had properly made out a *prima facie* case, whether the plaintiff really did so is no longer relevant.  The district court has before it all the evidence it needs to decide whether "the defendant intentionally discriminated against the plaintiff."

*Aikens*, 460 U.S. at 715 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)); *see Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008) ("The *Aikens* principle applies, moreover, to summary judgment as well as trial proceedings.").  In light of this guidance from the Supreme Court and the Fourth Circuit, the Court agrees with the District of Maryland that where the employer has met its burden of articulating a legitimate, nondiscriminatory reason for its adverse action against the plaintiff, the Court may assume, without deciding, that the plaintiff has established a prima facie case of discrimination.  *Lerner*, 2011 WL 2414967, at *14.

establish a genuine issue of material fact remains as to whether the articulated reason is pretext for unlawful discrimination.

Defendant argues Plaintiff was terminated in November 2010 for insubordination and dishonesty for not pulling his car out of the building as Davis instructed.  Davis reported the incident, and Roseberry talked to Davis about the incident and also talked to Mack, who corroborated Davis's story.  Defendant argues Plaintiff was terminated in March 2011 for dishonesty and getting paid while not performing work because, on March 24, 2011, Plaintiff changed his start time to 8:30 a.m. from 9:00 a.m. without management approval.  Based on these explanations, the Court concludes Defendant has met its burden under *McDonnell Douglas* to produce evidence from which a jury could conclude Defendant had a legitimate, nondiscriminatory reason for terminating Plaintiff.  Accordingly, the Court will consider whether Plaintiff has met his burden of demonstrating that Defendant's proffered reasons are merely a pretext for discrimination, which would indicate whether Plaintiff could meet his ultimate burden of persuasion and demonstrate discrimination *vel non*.  *See Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010) ("The final pretext inquiry 'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination,' which at all times remains with the plaintiff." (alteration in *Merritt*) (quoting *Burdine*, 450 U.S. at 256)).

To prove an employer's articulated reason is a pretext for discrimination, a plaintiff "must prove '*both* that the reason was false, *and* that discrimination was the real reason' for the challenged conduct."  *Jiminez v. Mary Wash. Coll.*, 57 F.3d 369, 378 (4th Cir. 1995) (emphasis in original) (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 515).  Upon review of the

13

record, the Court determines Plaintiff has failed to demonstrate a genuine issue of material fact as to whether Defendants' proffered reasons for terminating Plaintiff are merely a pretext for discrimination.

When determining whether an articulated reason is pretextual, "[i]t is the perception of the decision maker which is relevant." *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 445 (4th Cir. 1998), *overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002). The Fourth Circuit has addressed the situation where a plaintiff disagrees with the facts underlying a decision maker's assessment of the employee. *Hawkins v. Pepsico, Inc.*, 203 F.3d 274 (4th Cir. 2000). In *Hawkins*, the employer argued it terminated the plaintiff because she performed poorly in her special projects capacity and failed to improve even after receiving negative feedback. *Id.* at 279. The plaintiff claimed the employer's criticisms were inaccurate and insisted she performed her job well. *Id.* The court held the plaintiff could not show the employer's stated reasons for terminating her were not the real reasons for her discharge, noting "'it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for plaintiff's termination.'" *Id.* (citing *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) (internal quotation marks omitted in *Hawkins*)); *see id.* at 280 ("But instead of producing evidence that shows [the supervisor's] assessment of her performance was dishonest or not the real reason for her termination—as the law requires—[the plaintiff] disputes the merits of [the] evaluations.").

In his response in opposition to the motion for summary judgment, with respect to the November 2010 termination, Plaintiff contends that "on the same day he was

14

supposedly insubordinate the Plaintiff was denied a driver helper unlike white counterparts, was accused of a work stoppage for a broken down truck unlike white counterparts and ultimately accused of insubordination based on a blatant falsehood unlike white counterparts." [Doc. 52 at 10.] With respect to the March 2011 termination, Plaintiff does not specifically address pretext, but Plaintiff does argue that he "believes they used this to terminate him for racial reasons rather than have to go through the progressive discipline policy" because dishonesty is an offense that is terminable on the first occasion. [*Id.* at 11.] Although Plaintiff attempts to create issues of fact regarding whether Defendant's reasons were correct and/or fair, Plaintiff has failed to produce evidence, other than his own conclusory allegations, that Defendant did not believe Plaintiff had been insubordinate or dishonest or that his termination was inappropriately based on his race. *Cf. Hooker v. Hilton Hotels Corp.*, Civil Action No. ELJ-10-3019, 2012 WL 2798768, at *15 (D. Md. July 6, 2012) (discussing a termination following allegations of sexual harassment and stating, "if [the employer's] credibility determination was incorrect, and [the plaintiff] did not sexually harass his co-worker, his termination was extraordinarily unfortunate. But, without more, this does not constitute a violation of Title VII."). Accordingly, summary judgment should be granted on Plaintiff's discrimination claim regarding his terminations.

### Denial of Compensation for Attending Local Union Hearings

With respect to Plaintiff's allegation that he was denied compensation for attending local Union hearings, the Court agrees Plaintiff cannot establish a prima facie case of discrimination because he cannot establish that others outside his protected class were treated more favorably. *See White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir.

2004) ("[T]o establish a prima facie case of racial discrimination in compensation under either Title VII or section 1981, [a plaintiff needs] to show: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action with respect to compensation; and (4) that similarly-situated employees outside the protected class received more favorable treatment.").  Plaintiff testified that sometimes he was paid for attending such meetings and other times he was not.  [Doc. 52-1 at 24:4–9.]  He further testified that the other shop steward, Kelly, who is white, was paid for attendance at these meetings.  [*Id.* at 22:22–23:4.]  The evidence indicates that Kelly was treated the same as Plaintiff—he had been paid on one or more occasions for attending these meetings but was never again paid for such meetings after 2011 when local UPS management got "raked over the coals" for authorizing Kelly's compensation for the meeting.  [Doc. 41-14 at 3:23–5:17.]  Other than Kelly, who was treated the same as Plaintiff, Plaintiff has failed to identify anyone outside his protected class who was treated differently with respect to compensation for attending Union hearings.  Accordingly, summary judgment should be granted on Plaintiff's discrimination claim regarding denial of compensation for attending Union hearings.

### Excessive Work Loads and Driving an Unsafe Vehicle

With respect to Defendant's argument that Plaintiff failed to exhaust his claims related to excessive work loads and being forced to drive an unsafe vehicle, the Court disagrees.  First, Defendant argues Plaintiff failed to exhaust these claims through the CBA.  This argument was rejected by the Fifth Circuit Court of Appeals in *Ibarra v. United Parcel Service*, 695 F.3d 354 (5th Cir. 2012), interpreting the exact provisions at issue in

16

this case[8]; the Court finds the Fifth Circuit's reasoning persuasive. In *Ibarra*, the employer argued the grievance procedure established in the collective bargaining agreement established the sole remedy for the employee's Title VII claim. *Id.* The Fifth Circuit held that, "[be]cause the CBA does not clearly and unmistakably waive a union member's right to bring a Title VII claim in a federal judicial forum, the district court erred when it concluded that the CBA required Ibarra to submit her Title VII claim to the Article 51 grievance process." *Id.* at 360; *see also Mathews v. Denver Newspaper Agency LLP*, 649 F.3d 1199, 1206 (10th Cir. 2011) (holding that, even read in conjunction with the agreement's nondiscrimination provision, a requirement that disputes regarding "interpretation, application, or construction of the contract" be resolved through arbitration was not sufficient to waive an employee's right to a judicial forum for his statutory discrimination claims, explaining that "unionized employees . . . subjected to discriminatory treatment hold two similar claims, one based in statute, and one based in contract"). This Court agrees

---

[8]Here, as in *Ibarra*, the CBA contains a grievance procedure that defines a grievance as "any controversy, complaint, misunderstanding or dispute arising as to interpretation, application or observance of any of the provisions of this Agreement" and provides steps for handling grievances, culminating in submission of a grievance to an arbitrator through the Federal Mediation and Conciliation Service. [Doc. 41-4 at 11–14.]  Additionally, as in *Ibarra*, the CBA contains a nondiscrimination article that provides,

> The Employer and the Union agree not to discriminate against any individual with respect to hiring, compensation, terms or conditions of employment because of such individual's race, color, religion, sex, sexual orientation, national origin, physical disability[,] veteran status or age in violation of any federal or state law, or engage in any other discriminatory acts prohibited by law, nor will they limit, segregate or classify employees in any way to deprive any individual employees of employment opportunities because of race, color, religion, sex, national origin, physical disability, veteran status or age in violation of any federal or state law, or engage in any other discriminatory acts prohibited by law. This Article also covers employees with a qualified disability under the Americans with Disabilities Act.

[*Id.* at 6.]

that the CBA does not clearly and unmistakably waive the right to bring a Title VII claim in a federal court; accordingly, summary judgment should be denied on this basis.

Next, Defendant argues Plaintiff failed to exhaust these claims through the EEOC because he did not specifically raise these allegations in either the 2011 Charge or the 2013 Charge. The allegations contained in the administrative charge of discrimination generally limit the scope of any subsequent judicial complaint. *King*, 538 F.2d at 583 (stating that a subsequent civil suit "may encompass only the 'discrimination stated in the charge itself or developed in the course of a reasonable investigation of that charge'") (quoting *EEOC v. General Electric Co.*, 532 F.2d 359, 365 (4th Cir. 1976)). Only those claims stated in the initial administrative charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent lawsuit. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996) (affirming the district court's dismissal of some of the plaintiff's claims because they were outside the scope of her original EEOC charge and were therefore time barred). Because the EEOC has the authority to investigate charges and take necessary action to reach a resolution of the claims, permitting a federal complaint to include allegations outside the scope of the predicate EEOC charge would circumscribe the EEOC's purpose as well as deprive the employer of notice of the plaintiff's charges. *See Dorsey v. Pinnacle Automation Co.*, 278 F.3d 830, 838 (8th Cir. 2002) ("Allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge." (internal quotations and citation omitted)). When a claim "raised under Title VII

18

exceed[s] the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, [it is] procedurally barred." *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995). Here, the 2011 Charge included a statement that "[Plaintiff] had been previously the victim of racial discrimination which had bec[o]me a pattern and practice since 2008 when [he] had filed [his] original complaint." [Doc. 41-18 at 2.] The Court cannot find that Plaintiff's allegations related to excessive workloads and being forced to drive an unsafe vehicle would not have come up during the investigation of his EEOC charge; accordingly, these claims do not exceed the scope of the charge and summary judgment should be denied on this basis.[9]

**Retaliation Claim**

Defendant argues it is entitled to summary judgment on Plaintiff's retaliation claim because Plaintiff is unable to come forward with any evidence sufficient to establish a prima facie case of retaliation. [Doc. 41-1 at 24–32.] More specifically, Defendant argues Plaintiff's claims of retaliation based on written counseling and warnings do not constitute adverse employment actions; Plaintiff is unable to show a causal connection between any alleged protected activity and the alleged adverse employment actions; and Plaintiff is unable to establish a prima facie case of retaliation based on his March 2011 labor grievance because he cannot establish he engaged in protected activity when he filed a labor grievance. [*Id.*]

---

[9]However, as previously noted, Plaintiff's allegation regarding being forced to drive an unsafe vehicle is time barred and will be considered only with respect to Plaintiff's hostile work environment claim.

Additionally, the Court makes no determination as to whether the discrimination claim related to excessive workloads would succeed on the merits. At this procedural posture, Defendant has argued only that this claim is barred because Plaintiff failed to exhaust remedies.

Under Title VII, an employer is forbidden from taking action that discriminates against an employee because that employee has either "opposed any practice made an unlawful employment practice by this subchapter" or has "made a charge, testified, assisted, or participated in a Title VII investigation proceeding, or hearing under this subchapter." 42 U.S.C. § 2000d–3(a). The purpose of this anti-retaliation provision is to prevent "an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's most basic guarantees." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63 (2006). Thus, through the two clauses of the anti-retaliation provision, Title VII protects activities that can be characterized as opposing a practice that is unlawful under Title VII or as participating in a Title VII investigation, proceeding, or hearing. *Id.* at 59 (quoting 42 U.S.C. § 2000e–3(a)); *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998) (stating "[p]rotected activities fall into two distinct categories: participation or opposition"); *see also Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 274 (2009) (stating the first clause of the anti-retaliation provision is known as the "opposition clause," and the second clause is known as the "participation clause"). Activities protected under the participation clause—(1) making a charge; (2) testifying; (3) assisting; or (4) participating in any manner in an investigation, proceeding, or hearing under Title VII—are those "essential to the machinery set up by Title VII," and therefore, Title VII prohibits employers from retaliating against employees who undertake these actions. *Laughlin*, 149 F.3d at 259 n.4 (internal quotation marks omitted) (quoting *Hasimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir. 1997)).

Like discrimination claims, a plaintiff may prove a retaliation claim through direct evidence or by using the *McDonnell Douglas* burden-shifting framework.[10]  *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 248 (4th Cir. 2000); *Cooper v. City of N. Myrtle Beach*, No. 4:10-cv-1676, 2012 WL 1283498, at *6 (D.S.C. Jan. 25, 2012).  Similarly, it is ultimately the plaintiff's burden to demonstrate the employer's actions were motivated, at least in part, by an intent to retaliate.  *See McDonnell Douglas*, 411 U.S. at 804; *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007); *Cooper*, 2012 WL 1283498, at *10.

In this case, the Court must determine whether Plaintiff has demonstrated a genuine issue of material fact remains as to whether his being denied the benefits of his seniority, his increased work load,[11] his terminations,[12] his written counseling,[13] and his delivery run

---

[10]To establish a prima facie case of retaliation, the plaintiff must demonstrate "(1) she engaged in a protected activity, (2) the employer acted adversely against her, and (3) there was a causal connection between the protected activity and the asserted adverse action." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011).  To prove a causal connection existed between the protected activity and the asserted adverse action, a plaintiff must show the employer took the adverse action "'*because* the plaintiff engaged in protected activity.'"  *Holland*, 487 F.3d at 218 (emphasis in original) (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998)).

[11]Plaintiff testified that the incident regarding excessive workload and being denied a helper occurred in November 2010.  [Doc. 52-1 at 20:22–21:15.]  Plaintiff alleges he complained that he and other black employees were being treated unfairly and being held to a higher standard of performance than similarly situated white coworkers in January 2011.  [Doc. 32 ¶ 10.]  Accordingly, because the alleged employment action occurred before any protected activity, summary judgment should be granted with respect to Plaintiffs retaliation claim based on excessive workload and being denied a helper.

[12]Here, as discussed above, Plaintiff has failed to present any evidence of pretext following Defendant's articulated legitimate, nonretaliatory explanation for terminating Plaintiff's employment—insubordination and dishonesty.  Accordingly, summary judgment should be granted with respect to Plaintiff's retaliation claim based on his terminations.

[13]Plaintiffs written counseling for working over 9.5 hours and documentation for a counseling session regarding driving with his bulkhead door open do not constitute adverse employment actions.  The Supreme Court has clarified that a different and less strenuous standard is used to define adverse employment actions in the retaliation context as opposed to other Title VII contexts: "[T]he anti-retaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." *Burlington Northern & Santa Fe Rwy. v. White*, 26 S.Ct. 2405, 2412–13 (2006).  However, the anti-retaliation provision "protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Id.* at 2414.  Thus, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable

being cut[14] were motivated, at least in part, by retaliation.  As stated, Defendant contends written counseling and warnings do not constitute adverse employment actions, Plaintiff is unable to show a causal connection between any alleged protected activity and the alleged adverse employment actions, and Plaintiff cannot establish that he engaged in protected activity when he filed a labor grievance.  [Doc. 41-1 at 24–32.]

### *Being Denied the Benefits of His Seniority*

Here, no genuine issue of material fact remains as to Plaintiff's retaliation claim with respect to his being denied the benefits of his seniority in March 2011 because Plaintiff has failed to demonstrate retaliation was a motivating factor—specifically, Plaintiff has failed to show evidence of any causal connection between his complaints to Defendant and his being denied the benefits of his seniority.  Plaintiff has provided no evidence other than his own assertions that suggests a nexus between the two events.  Plaintiff complained to Roseberry and Wayne Shephard in Jnauary 2011.   [Doc. 32 ¶ 10; Doc. 52-1 at 18:13–19:8.]  Plaintiff alleges he was denied the benefits of his seniority on March 22, 2011, the same morning Fletcher "attacked [Plaintiff] in the office." [Doc. 52-1 at 20:6–18.]

---

worker from making or supporting a charge of discrimination."  *Id.* at 2415 (quotation marks and citations omitted).  Even under the less stringent standard set forth in *Burlington Northern*, Plaintiff's written counseling and documentation for counseling session do not rise to the level of materially adverse employment actions. *See Parsons v. Wynne*, 221 F. App'x 197, 199 (4th Cir.2007) (unpublished) (adverse performance evaluation and change in work schedule are not materially adverse actions); *Washington v. Norton*, Civil Action No. 3:04-CV-104, 2007 WL 1417290, at *4 (N.D.W. Va. May 11, 2007) ("Reprimanding an employee for unprofessional conduct or warning an employee about poor performance by letter . . . would not dissuade a worker from filing protected complaints"); *Gordon v. Gutierrez*, No. 1:06-cv-861, 2007 WL 30324, at *9 (E.D. Va. Jan. 4, 2007) ("circumstances of verbal counseling . . . would not discourage a reasonable employee").

[14]A review of the Amended Complaint reveals that these employment actions appear to be alleged as retaliatory in nature.  Moreover, in its memorandum in support of the motion for summary judgment, Defendant addressed these employment actions under the retaliation section, and Plaintiff likewise discussed these employment actions in the retaliation section of his response in opposition.  Accordingly, the Court addresses these employment actions as being brought under a claim of retaliation.

The Fourth Circuit has held that two weeks and two months between protected activity and adverse action "is sufficiently long so as to weaken significantly the inference of causation between the two events." *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003). Because Plaintiff has offered no other evidence of causation, he cannot rely on temporal proximity alone to establish that being denied the benefits of his seniority to defer work to a lower senior driver was causally related to his protected activity when the events were over two months apart.

### Cutting Plaintiff's Delivery Run

With respect to Defendant's argument that Plaintiff is unable to establish a causal connection between any protected activity and Plaintiff's delivery run being cut, the Court disagrees. Plaintiff filed this case on March 8, 2012, and his run was cut around April 18, 2012. Defendant has failed to cite to any Fourth Circuit case law holding that five weeks is too long to allow temporal proximity alone to establish a causal connection. Accordingly, summary judgment should be denied on this basis.[15]

**Hostile Work Environment Claim**

Defendant argues it is entitled to summary judgment on Plaintiff's hostile work environment claim because Plaintiff has failed to present any evidence that the alleged discrimination was based on race or that the conduct was sufficiently severe or pervasive to be actionable.

---

[15]Although Defendant also argues that white drivers have had their runs cut over the course of their employment, Defendant's argument is misguided here. Plaintiff appears to argue his run was cut in retaliation for his engaging in the protected activity of filing this lawsuit. Accordingly, Plaintiff does not argue his run was cut because of his race.

The Court makes no determination as to whether Plaintiff can establish pretext with respect to this claim. At this procedural posture, Defendant has argued only that Plaintiff cannot establish a prima facie case.

To prove a hostile work environment, the plaintiff must show that: (1) he was harassed because of his race; (2) the harassment was unwelcome; (3) the harassment was sufficiently severe or pervasive to create an abusive working environment; and (4) some basis exists for imputing liability to the employer. *Gilliam v. South Carolina Department of Juvenile Justice*, 474 F.3d 134, 142 (4th Cir. 2007); *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 331 (4th Cir. 2003) (en banc).

In *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), the Supreme Court reaffirmed its previously articulated standard for determining when a plaintiff has established a hostile work environment, stating that a plaintiff must establish that the environment was "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher*, 524 U.S. at 787 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993)). Actionable harassment occurs when the workplace is "permeated with discriminatory intimidation, ridicule, and insult." *Harris*, 510 U.S. at 21. Title VII is not a "general civility code." *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998). "Workplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe and pervasive standard." *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). "[C]omplaints premised on nothing more than rude treatment by co-workers, callous behavior by supervisors, or a routine difference of opinion and personality conflict with one's supervisors are not actionable under Title VII." *Id.*

24

When considering a plaintiff's claim that he was subjected to a hostile work environment, the Court must consider the totality of the circumstances. Relevant factors "may include the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. "To be actionable, the conduct must create an objectively hostile or abusive work environment, and the victim must also perceive the environment to be abusive." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 184 (4th Cir. 2007).

Plaintiff has not shown that his alleged harassment was based on his race. First, there is no direct evidence that any of the conduct, including Fletcher slamming his hand on the desk, was motivated by racial animus. Plaintiff points to no evidence that derogatory comments were made to him or anyone about his race. Second, although Plaintiff was entitled to show that he was treated differently than similarly-situated white coworkers on the basis of race, he has not done so. Moreover, Plaintiff has failed to establish that the conduct was sufficiently severe or pervasive to be actionable. Accordingly, Plaintiff is entitled to summary judgment on this claim.

**<u>RECOMMENDATION</u>**

Wherefore, based upon the foregoing, the Court recommends that Defendant's motion for summary judgment be GRANTED IN PART and DENIED IN PART. The Court recommends that the motion be denied with respect to Plaintiff's discrimination claim

based on excessive workload and retaliation claim based on cutting Plaintiff's delivery run.

The Court recommends that the motion be granted with respect to all other claims.

      IT IS SO RECOMMENDED.

                        s/Jacquelyn D. Austin
                        United States Magistrate Judge

February 14, 2014
Greenville, South Carolina