## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF SOUTH CAROLINA
### ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Frank Crosby, | ) | Civil Action No. 8:12-00681-JMC |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | **ORDER AND OPINION** |
| United Parcel Service, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |

Plaintiff Frank Crosby ("Plaintiff") filed this action against his employer, Defendant United Parcel Service, Inc. ("Defendant"), alleging that he was subjected to discrimination and a hostile work environment because of his race, and retaliated against in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2000e-17.  (ECF No. 32.)

This matter is before the court on a motion by Defendant for summary judgment pursuant to Fed. R. Civ. P. 56 ("Rule 56 motion").  (ECF No. 41.)  In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02(B)(2)(g) D.S.C., the matter was referred to United States Magistrate Judge Jacquelyn D. Austin for pretrial handling.  On February 14, 2014, the Magistrate Judge issued a Report and Recommendation in which she recommended that the court denies Defendant's Rule 56 motion as to Plaintiff's claims for discrimination based on excessive workload and retaliation based on cutting his delivery run, but grants the Rule 56 motion as to all other claims.  (ECF No. 62.)  Plaintiff and Defendant both objected to the Magistrate Judge's recommendation.  (ECF Nos. 66, 67.)  For the reasons set forth below, the court **ACCEPTS IN PART AND REJECTS IN PART** the Magistrate Judge's recommendation and **GRANTS IN PART AND DENIES IN PART** Defendant's Rule 56 motion.  The court grants the motion for summary judgment as to (1) Plaintiff's claim for race discrimination against Defendant for denying him the benefits of his

seniority, giving him excessive workloads without a helper, not allowing him to go to the hospital when he was dehydrated, forcing him to drive an unsafe vehicle, and terminating him in November 2010 and March 2011; (2) Plaintiff's retaliation claim against Defendant for giving him excessive workloads without a helper, for terminating him in November 2010 and March 2011, and for giving him written counseling; and (3) Plaintiff's claim for hostile work environment.  The court denies the motion for summary judgment as to Plaintiff's claims for (1) discrimination regarding his compensation for attending Union hearings, (2) retaliation based on the denial of the benefits of his seniority, and (3) retaliation for the cutting of his delivery run.

## I.      RELEVANT BACKGROUND TO PENDING MOTION

The facts as viewed in the light most favorable to Plaintiff are discussed in the Report and Recommendation.  (See ECF No. 62.)  The court concludes, upon its own careful review of the record, that the Magistrate Judge's factual summation is accurate and incorporates it by reference.  The court will only reference herein facts pertinent to the analysis of Plaintiff's claims.

Defendant is a global parcel delivery company that owns and operates a package center in Anderson, South Carolina, where packages are sorted and loaded onto package cars for local delivery and processed for shipment to other locations.  (ECF Nos. 1 at 1 ¶ 2, 41-1 at 1.) Defendant maintains a Professional Conduct and Anti-Harassment Policy, which policy makes clear that Defendant prohibits race discrimination and harassment.  (ECF No. 41-5.)  In addition, in its comprehensive compliance manual called the Code of Business Conduct, Defendant prohibits discrimination on the basis of age, race, religion, sex, disability, national origin, or veteran status.  (ECF No. 41-6.)

On or around August 26, 1996, Defendant hired Plaintiff, an African-American male, as a

part-time preloader.  (ECF Nos. 1 at 2 ¶ 6, 41-2 at 3:18-25.)  On August 26, 2000, Defendant promoted Plaintiff to full-time package car driver, a position that he continues to hold to this day. (ECF 41-2 at 4:1-12.)  Since 2010, Plaintiff has served as a shop steward at the Anderson, South Carolina package center for the Local 509 of the International Brotherhood of Teamsters (the "Union").[1]  (Id. at 5:16-22.)

In 2006, Plaintiff called Defendant's helpline to report that Greg Metcalf, a white employee with less seniority than Plaintiff, had been placed above him on the seniority list. (ECF No. 52-1 at 9:7–25.)  Plaintiff grieved the seniority issue.  (Id. at 10:23–24; ECF No. 41-8 at 42.)  As a result of the grievance, Plaintiff was placed ahead of Metcalf on the seniority list and remains higher on the seniority list to this day.  (ECF No. 52-1 at 16:16–23.)  Plaintiff believes that the seniority issue constitutes discrimination on the basis of his race.  (Id. at 10:5–7.)

Plaintiff alleges he was discriminated against in 2008 when he was told to continue driving an unsafe vehicle.  (Id. at 25:21–26:19.)  Plaintiff had a flat tire while driving on his route and was instructed to continue driving the vehicle even though Plaintiff thought the vehicle was unsafe for the road.  (Id.)  Plaintiff alleges that Matt Morgan, a white driver, had a flat tire in 2011, and Defendant did not tell him to continue driving the unsafe vehicle.  (Id. at 27:7–10.)

In August 2010, Plaintiff became dehydrated while on his route but was told not to seek medical treatment.  (Id. at 7:13–25.)  Plaintiff was nauseated and dizzy and did not think he could drive.  (Id.)  However, when Plaintiff explained that he thought he needed medical

---

[1] The Union and Defendant have entered into a collective bargaining agreement referred to as the National Master United Parcel Service Agreement and Atlantic Area Supplemental Agreement (the "CBA").  (See ECF No. 41-4.)  The CBA covers all aspects of employment for bargaining unit employees and sets forth the terms, rights, and obligations with respect to "wages, hours and other conditions of employment." (Id. at 3.)  The CBA expressly prohibits all forms of employment discrimination.  (Id. at 6.)

attention, Wil Fletcher ("Fletcher"), a white male on-car supervisor, told Plaintiff to drive the car back to the package center. (Id.)

On November 23, 2010, Plaintiff sought a meeting with Jackie Davis ("Davis"), the package dispatch supervisor, to find out the name of his delivery helper.[2] (ECF No. 41-9 at 6:3–7.) During their conversation, Davis asked Plaintiff to pull his car out of the building because Plaintiff was blocking three other cars. (Id. at 6:10–11, 8:1–4.) In response to Davis's request, Plaintiff pulled out a booklet to take notes and repeatedly asked Davis for the meeting place for his helper. (Id. at 11-16.)

Davis reported the "helper" incident to Chris Roseberry ("Roseberry"), the manager of the package center, and Fletcher. (Id. at 9:15–21.) Roseberry talked to Davis about the incident and also talked to Don Mack ("Mack"), a driver who was parked next to Plaintiff at the time of the incident. (ECF No. 41-10 at 4:24–5:23.) Mack corroborated Davis's story and said that Davis asked Plaintiff to pull out of the building, but Plaintiff was being stubborn and would not pull out of the building. (Id. at 5:5–19.)

On November 30, 2010, Defendant terminated Plaintiff for gross insubordination and dishonesty based on conduct that occurred on November 23, 2010. (ECF No. 41-11.) Plaintiff grieved his termination. (ECF Nos. 41-8 at 11.) After a grievance hearing on December 1, 2010, Defendant reduced Plaintiff's termination to a "suspension all time served" and he returned to work on December 2, 2010. (ECF No. 41-12.)

In January 2011, Plaintiff complained to his supervisors Chris Roseberry, a white male, and Wayne Shepard, a white male, that he and other black employees were being treated unfairly and were being held to a higher standard of performance than similarly situated white co-

---

[2] Plaintiff alleges that he was discriminated against based on his race by being treated differently than white employees with respect to having a helper on his runs. (ECF No. 52-1 at 21:3–22:1.)

workers.  (ECF Nos. 32 at 7 ¶ 10, 52-1 at 18-20.)

On March 22, 2011, Plaintiff was in a meeting with Fletcher, who verbally berated Plaintiff and slammed his fist on his desk in a manner that was threatening to Plaintiff.  (ECF Nos. 48-1 at 43:6-8, 41-13 at 3-5.)  Plaintiff alleges that Fletcher's attitude toward him was different than the manner in which Fletcher dealt with disagreements with white employees. (ECF No. 47 at 3.)  Plaintiff also alleges that on March 22, 2011, Defendant denied him the benefits of his seniority by not allowing him to defer work to a lower senior driver.  (ECF No. 52-1 at 20:6-18.)

On March 24, 2011, in anticipation of a meeting with Roseberry, Plaintiff changed the start time on his timecard from 9:00 a.m. to 8:30 a.m. without management approval.[3]  (ECF Nos. 41-10 at 11:7–12, 41-16 at 3, 48-11 at 84-86.)  When he was informed Roseberry would not be at the meeting, Plaintiff changed his time back to 9:00 a.m. on the other work screen but not the initial clock in screen.  (ECF No. 52-1 at 48.)  Thereafter, on March 29, 2011, Plaintiff was terminated for dishonesty and failure to follow company methods, procedures, and instructions. (ECF No. 41-1 at 9.)  Plaintiff grieved his March 29, 2011 termination, which termination was reduced to a time-served suspension without any back pay.  (ECF Nos. 41-16 at 3, 41-17.) Plaintiff returned to work in the same position and seniority he had prior to the termination. (ECF No. 41-2 at 29:6-12.)

On July 11, 2011, Plaintiff filed a charge of discrimination (the "2011 Charge") with the United States Equal Employment Opportunity Commission (the "EEOC").  (ECF No. 41-18.)  In the 2011 Charge, Plaintiff alleged that he complained to supervisors that African-American employees were treated unfairly and held to a higher standard than similarly situated white

---

[3] One of Plaintiff's complaints is that he was not paid for attending meetings as the shop steward when the other shop steward, who is white, was paid for those meetings.  (ECF No. 52-1 at 22:18–25:15.)

coworkers.  (Id. at 2.)  Plaintiff also alleged that Fletcher treated him different than he did white employees.  (Id.)  Plaintiff further contended that he was pulled out of service after filing a grievance against Fletcher and then terminated the next day.  (Id.)

After receiving the right to sue from the EEOC, Plaintiff filed an action on March 8, 2012 in this court alleging claims for discrimination and a hostile work environment on account of his race and retaliation.  (ECF No. 1.)  In April 2012, Plaintiff alleges that his delivery run was cut from rotation and his work was given to a white male driver, which resulted in a loss of work for Plaintiff of thirty to forty days.  (ECF No. 32 at 4 ¶ 18.)  Plaintiff further alleges that he was not allowed to bid on other delivery runs based on his seniority.  (Id.)

Defendant answered the complaint on April 23, 2012, denying its allegations.  (ECF No. 6.)

Plaintiff filed a second charge of discrimination with the EEOC on February 14, 2013 (the "2013 Charge").  (ECF No. 41-19.)  In the 2013 Charge, Plaintiff alleged he was given a written counseling for working overtime after he was instructed to work overtime.  (Id. at 2.) Plaintiff further alleged that his run was cut around April 18, 2012, resulting in a thirty to forty day layoff and then his work was given to a less senior driver.  (Id.)  Plaintiff asserted that these actions were in retaliation for the 2011 Charge and his pending lawsuit.  (Id.)

After receiving the right to sue from the EEOC, Plaintiff filed an amended complaint on April 19, 2013, to assert additional allegations in support of his claims for discrimination and a hostile work environment on account of his race and retaliation.  (ECF No. 32.)  Defendant answered the amended complaint on May 3, 2013, denying its allegations.  (ECF No. 33.)  On August 16, 2013, Defendant filed its Rule 56 motion.  (ECF No. 41.)  Plaintiff filed opposition to the Rule 56 motion on October 2, 2013, to which Defendant filed a reply in support of summary

judgment on October 15, 2013.  (ECF Nos. 47, 52, 58.)

In accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 D.S.C., the magistrate judge issued a Report and Recommendation on February 14, 2014, recommending that Defendant's Rule 56 motion be granted in part and denied in part.  (ECF No. 62.)  On March 10, 2014, Plaintiff and Defendant filed objections to the Report and Recommendation.  (ECF Nos. 66, 67.)

## II.    LEGAL STANDARD

A.    The Magistrate Judge's Report and Recommendation

The Magistrate Judge makes only a recommendation to this court.  The recommendation has no presumptive weight.  The responsibility to make a final determination remains with this court.  See Mathews v. Weber, 423 U.S. 261, 270-71 (1976).  The court reviews de novo only those portions of a magistrate judge's report and recommendation to which specific objections are filed, and reviews those portions which are not objected to - including those portions to which only "general and conclusory" objections have been made - for clear error.  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983); Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).  The court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions.  See 28 U.S.C. § 636(b)(1).

B.    Summary Judgment Generally

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law.  Anderson v. Liberty Lobby Inc., 477 U.S. 242,

248–49 (1986).  A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the nonmoving party. Newport News Holdings Corp. v. Virtual City Vision, 650 F.3d 423, 434 (4th Cir. 2011).

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).  The non-moving party may not oppose a motion for summary judgment with mere allegations or denial of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial.  Fed. R. Civ. P. 56(e); see Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991).  All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  Anderson, 477 U.S. at 249.  "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion."  Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995).  A party cannot create a genuine issue of material fact solely with conclusions in his or her own affidavit or deposition that are not based on personal knowledge.  See Latif v. The Cmty. Coll. of Baltimore, No. 08-2023, 2009 WL 4643890, at *2 (4th Cir. Dec. 9, 2009).

C.    Claims for Discrimination under Title VII

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; . . . ."  42 U.S.C. § 2000e-2(a)(1).  A plaintiff can establish a claim of discrimination under Title VII in one of two ways, either by directly showing that discrimination

motivated the employment decision, or, as is more common, by relying on the indirect, burden-shifting method set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Where there is direct evidence of discrimination, the McDonnell Douglas burden-shifting framework does not apply.  Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121 (1985).

Pursuant to this burden-shifting framework, once the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, non-discriminatory reason for its employment action.  Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010).  If the defendant meets the burden to demonstrate a legitimate, non-discriminatory reason for its employment action, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the proffered reason was "not its true reason[ ], but [was] a pretext."  Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).  Though intermediate evidentiary burdens shift back and forth under this framework, the ultimate burden of persuasion that the defendant engaged in intentional discrimination remains at all times with the plaintiff.  See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000).

D.    Claims for Hostile Work Environment under Title VII

Title VII prohibits an employer from subjecting an employee to a hostile work environment because of his race.  42 U.S.C. § 2000e-2(a)(1).  To state a prima facie case of a hostile work environment based on race, a plaintiff must demonstrate that:  (1) he experienced unwelcome harassment; (2) the harassment was based on his race; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer.  Chao v. Rivendell Woods, Inc., 415 F.3d 342, 347 (4th Cir. 2005); White v. BFI Waste Servs., LLC, 375 F.3d 288, 297 (4th Cir. 2004); Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th

Cir. 2003).

To meet the causation element, a plaintiff must show that "but for" the protected characteristic, he would not have been a victim of harassment.  See Causey v. Balog, 162 F.3d 795, 801 (4th Cir. 1998).  The "severe or pervasive" third element of a hostile work environment claim "has both subjective and objective components."  Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 333 (4th Cir. 2003).  First, a plaintiff must show that he "subjectively perceive[d] the environment to be abusive."  Harris v. Forklift Systems, Inc., 510 U.S. 17, 21-22 (1993). Second, a plaintiff must demonstrate that the conduct was such that "a reasonable person in the plaintiff's position" would have found the environment objectively hostile or abusive.  Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81-82 (1998).

Actionable harassment occurs when the workplace is "permeated with discriminatory intimidation, ridicule, and insult."  Harris, 510 U.S. at 21.  Title VII is not a "general civility code."  Oncale, 523 U.S. at 80.  Further, when analyzing the third element, courts examine the totality of the circumstances, considering such factors as the frequency of the discriminatory conduct and its severity; whether it is physically threatening or humiliating or merely constitutes offensive verbal statements; and whether it unreasonably interferes with an employee's work performance.  See Harris, 510 U.S. at 23; Hopkins v. Baltimore Gas & Elec. Co., 77 F.3d 745, 753 (4th Cir. 1996); see also E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 315-16 (4th Cir. 2008) (stating that complaints that would objectively give rise to bruised or wounded feelings or incidents that are premised on nothing more than rude treatment, callous behavior, or a routine difference of opinion and personality conflict will not satisfy the severe or pervasive standard).

E.    Claims for Retaliation under Title VII

Title VII protects individuals from retaliation by providing that it is an "unlawful

employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."   42 U.S.C. § 2000e-3(a).   To demonstrate a prima facie case of retaliation under Title VII, a plaintiff must show (1) that he engaged in protected activity; (2) that his employer took an adverse employment action against him; and (3) that a causal connection existed between the protected activity and the asserted adverse action.  See Munday v. Waste Mgmt. of N. Am., Inc., 126 F.3d 239, 242 (4th Cir. 1997).

As to the first element, "[o]pposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities."  Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998).  "As long as an employee complains to his or her employer or participates in an employer's informal grievance procedure in an orderly and nondisruptive manner, the employee's activities are entitled to protection under § 704's opposition clause." Kubicko v. Ogden Logistics Serv., 181 F.3d 544, 551 (4th Cir. 1999).  A plaintiff meets the second element of this test if "a reasonable employee would have found the challenged action materially adverse," meaning that it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006).  The third element of the test may be satisfied merely by close temporal proximity between the protected activity and the adverse employment action.  See Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001).

Once the plaintiff establishes a prima facie case of retaliation, the defendant can rebut the presumption of retaliation by articulating a non-discriminatory reason for its action.  Matvia v.

Bald Head Island Mgmt., Inc., 259 F.3d 261, 271 (4th Cir. 2001) (citation omitted).  At that point, the plaintiff has the opportunity to prove that the employer's legitimate, non-discriminatory reason is pretextual.  Id.

### III.    ANALYSIS

A.    Claims for Discrimination under Title VII

In the Report and Recommendation, the Magistrate Judge determined that Plaintiff alleged claims of race discrimination from when (1) his seniority status was disregarded; (2) he was given excessive workloads without a helper; (3) he was not allowed to go to the hospital when he was dehydrated; (4) he was not paid for attending local Union hearings; (5) he was forced to drive an unsafe vehicle; and (6) he was terminated in November 2010 and March 2011.  (ECF No. 62 at 11.)  Upon her review, the Magistrate Judge determined that Plaintiff's claims that he was prohibited from going to the hospital and forced to drive an unsafe vehicle were time-barred because they occurred before September 14, 2010.  (Id. at 11 ("Plaintiff filed the 2011 Charge on July 11, 2011, and Plaintiff's claims that occurred more than 300 days before July 11, 2011 are beyond the limitations period of Title VII.") (citing, e.g., 42 U.S.C. § 2000e-5(e)(1)).)  The Magistrate Judge further determined that Defendant articulated legitimate, non-discriminatory reasons for the November 2010 and March 2011 terminations of Plaintiff and he failed to create an issue of material fact regarding whether the articulated reasons were pretext for unlawful discrimination.  (Id. at 12-13.)

The Magistrate Judge recommended granting summary judgment to Defendant on Plaintiff's discrimination claim that he was denied compensation for attending Union hearings. She found that Plaintiff failed to establish a prima facie case of discrimination in compensation because he could not identify anyone outside his protected class who was treated differently with

respect to compensation for attending Union hearings.  (Id. at 16 ("The evidence indicates that Kelly [who is white] was treated the same as Plaintiff—he had been paid on one or more occasions for attending these meetings but was never again paid for such meetings after 2011 when local UPS management got 'raked over the coals' for authorizing Kelly's compensation for the meeting.").)  Finally, the Magistrate Judge recommended denying summary judgment on Plaintiff's claim regarding excessive workloads because (1) the CBA did not waive the right to bring a Title VII claim and (2) the claim was within the scope of the 2011 charge of discrimination.  (Id. at 16-19.)

> 1.  *The Parties' Objections*

In his objections to the Report and Recommendation, Plaintiff argues that the Magistrate Judge erred in finding that he failed to produce evidence that his terminations in November 2010 and March 2011 were a pretext for unlawful discrimination.  (See ECF No. 66 at 2-4.)  In this regard, Plaintiff asserts that the evidence from the "helper" incident, which led to his November 2010 termination and was relied on by the Magistrate Judge to recommend summary judgment for Defendant, did not clearly convey the totality of his exchange with Roseberry.  (Id. at 2.)  Moreover, Plaintiff asserts that he can establish pretext because Defendants communicated to him inconsistent reasons for his termination.  (Id. at 3 ("Although told he was being terminated for work stoppage, he was then accused of the alleged insubordination instead.").)  Plaintiff further asserts that he can establish pretext as to the March 2011 termination based on the questionable circumstances surrounding his encounter with Fletcher on March 22, 2011 and the allegation that he was trying to steal time on March 24, 2011.  (Id. at 3-4.)

Plaintiff next argues that the Magistrate Judge erred regarding his discrimination claim for denial of compensation for attending Union hearings because his evidence clearly establishes

that Kelly, a white male driver who was also a shop steward, was treated better by being paid for additional situations that Plaintiff was not.  (Id. at 5.)

In its objections, Defendant argues that the Magistrate Judge erred in denying it summary judgment on Plaintiff's excessive workload claim alleging he was denied a helper because of his race.  (See ECF No. 67 at 4-5.)  In support of this argument, Defendant first asserts that the workload claim is contradicted by evidence such as unrebutted testimony by Fletcher and Davis establishing that Plaintiff did have a helper on the only day he claims he was denied a helper. (Id. at 5 (citing ECF No. 67-1 at 2:24-25) ("I do recall [Plaintiff] had a helper with him that particular day.").)  Defendant next asserts that the Magistrate Judge erred by not finding that Plaintiff's claim for discrimination based on excessive workload was barred because he failed to exhaust his administrative remedies by grieving the claim through the CBA's grievance process or by raising the claim in a charge of discrimination with the EEOC.  (See id. at 7-12.)  In this regard, Defendant argues that Fourth Circuit precedent required Plaintiff to exhaust the CBA grievance procedure and raise the workload claim in a charge with the EEOC before bringing suit alleging a violation of Title VII.  (Id. (citing, e.g., Austin v. Owens-Brockway Glass Container, Inc., 78 F.3d 875 (4th Cir. 1996) (finding that the plaintiff contractually agreed to submit her Title VII discrimination claim through the grievance procedure and that such a provision in the collective bargaining agreement was enforceable); Chacko v. Patuxent Inst., 429 F.3d 505, 506 (4th Cir. 2005) ("Before a Title VII plaintiff can bring a formal suit, he must file an administrative charge with the Equal Employment Opportunity Commission.")).)

Finally, Defendant asserts that "the Magistrate Judge erred in denying summary judgment on Plaintiff's excessive workload claim because, even construed in the light most favorable to Plaintiff, the alleged denial of a helper for a portion of a single day simply does not rise to the

level of adverse employment action within the meaning of Title VII." (Id. at 12.) Defendant argues that its alleged failure to provide Plaintiff with a helper for part of a single work day does not qualify as an adverse employment action under Title VII. (Id. at 12-13 (citing Wagstaff v. City of Durham, 233 F. Supp. 2d 739, 744 (M.D.N.C. 2002) (To constitute an adverse employment action, there must be "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.")).) Based on the foregoing, Defendant argues that it is entitled to summary judgment on Plaintiff's claim for discrimination based on excessive workload.

### 2. The Court's Review

#### i. Plaintiff's Objection Regarding His Terminations

Defendant terminated Plaintiff on November 30, 2010 for gross insubordination and on March 29, 2011 for dishonesty and failure to follow company methods, procedures, and instructions. (See ECF Nos. 41-11, 41-1 at 9.) Plaintiff contends that he can establish pretext in both of these decisions. First, in regards to the November 30, 2010 termination, Plaintiff argues that pretext is evident because "on or around the same day he was supposedly insubordinate[,] the Plaintiff was denied a driver helper unlike white counterparts, was accused of a work stoppage for a broken down truck unlike white counterparts and ultimately accused of insubordination based on a blatant falsehood unlike white counterparts." (ECF No. 52 at 10.) Plaintiff argues there is pretext in his March 29, 2011 termination because "numerous employees outside Plaintiff's protected class [] have made errors on the time card and [have] not been subjected to termination." (Id.)

To survive Defendant's motion for summary judgment on his race discrimination claims

regarding his terminations, Plaintiff has to come forward with sufficient evidence to demonstrate that the legitimate reason offered by Defendant was not its true reason, but was a pretext for discrimination. "The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered." Anderson v. Ziehm Imaging, Inc., C/A No. 7:09-02574-JMC, 2011 WL 1374794, at *5 (D.S.C. Apr. 12, 2011) (citing Stewart v. Henderson, 207 F.3d 374, 376 (7th Cir. 2000)). "The ultimate question is whether the employer intentionally discriminated and proof that the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that [plaintiff's] proffered reason . . . is correct . . . [i]t is not enough to disbelieve the [employer]." Love-Lane v. Martin, 355 F.3d 766, 788 (4th Cir. 2004) (quoting Reeves, 530 U.S. at 146-47) (internal citations omitted). Rather, Plaintiff must demonstrate that a reasonable jury could "believe [her] explanation of intentional race discrimination." Id.

Upon the court's review, there is insufficient evidence to support a finding that Defendant's decision to terminate Plaintiff on either November 30, 2010 or March 29, 2011 was motivated by Plaintiff's race. The court finds Plaintiff's evidence as highlighted in his objections to the Magistrate Judge's Report and Recommendation does not rise to the level necessary to establish that his race actually played a role in the decision-making process and had a determinative influence on the outcome. In employment discrimination actions, it is not the role of the court to "sit as a super-personnel department weighing the prudence of employment decisions." Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 272 (4th Cir. 2005) (internal quotation marks omitted). Based on the foregoing, the Magistrate Judge correctly found that Plaintiff has not produced sufficient evidence to meet his burden of proving that Defendant's asserted reasons for terminating him on either November 30, 2010 or March 29,

2011 were a pretext for race discrimination. Accordingly, Plaintiff's Title VII race discrimination claims regarding his terminations on November 30, 2010 and March 29, 2011 fail as a matter of law and Defendant is entitled to summary judgment.

### ii. Plaintiff's Objection Regarding Denial of Compensation for Attending Union Hearings.

To establish a prima facie case of discrimination in compensation under Title VII, Plaintiff needs to show: (1) he is a member of a protected class; (2) satisfactory job performance; (3) adverse employment action with respect to compensation; and (4) that similarly-situated employees outside the protected class received more favorable treatment. White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004). It is undisputed that Plaintiff as an African-American is a member of a protected class. Moreover, Defendant has not alleged that Plaintiff's job performance was unsatisfactory in the context of this claim. As to the third and fourth elements of compensation discrimination claim, Plaintiff argues that Steve Kelly ("Kelly"), a white male driver serving as a shop steward, received more favorable treatment because of his race "by being paid for additional situations that Plaintiff was denied payment (such as the grievant not being present at the meeting)." (ECF No. 66.) In support of his argument, Plaintiff submitted a signed statement from Kelly who confirmed that he "was paid for local level hearings when they were scheduled during the time the grieved employee was not present . . . ." (ECF No. 52-6 at 2.)

Upon review, the court finds that Plaintiff's testimony and arguments in combination with Kelly's statement establish a prima facie case of discrimination regarding whether Kelly was treated better than Plaintiff because of their respective races. The court further finds that Plaintiff's evidence, if viewed in the light most favorable to him, can establish pretext in Defendant's contention that Kelly was only compensated one time for attending local level

Union hearings.  (Citing ECF No. 41-1 at 20.)   Accordingly, the court sustains Plaintiff's objection to the Report and Recommendation and denies Defendant's Rule 56 motion on the cause of action for discrimination in compensation for attending Union hearings.

### iii.  Defendant's Objection Regarding Plaintiff's Excessive Workload Claim

The CBA covering employees at Defendant's package center in Anderson, South Carolina contains a grievance procedure.  (See ECF No. 41-4 at 11-15.)  Defendant asserts that the Magistrate Judge erred by not finding that Plaintiff's claim for excessive workloads was barred because he failed to grieve the issue through the CBA's grievance procedure.  The court agrees.

Plaintiff testified that he did not submit his contention about excessive workloads through the grievance procedure.  (ECF No. 41-2 at 15:8-10.)  "[T]he rule of the Supreme Court and this circuit is that an employee must follow the grievance procedure established by the collective bargaining agreement prior to filing suit in federal court."   Austin, 78 F.3d at 885 (citing Republic Steel Corp. v. Maddox, 379 U.S. 650, 652 (1965); Adkins v. Times–World Corp., 771 F.2d 829, 832 (4th Cir. 1985)).  "Thus, an employee cannot sue an employer without first going through the grievance procedure, . . . ."  Id.   Based on the foregoing, the court sustains Defendant's objection to the Report and Recommendation and grants it summary judgment on Plaintiff's discrimination claim for excessive workloads.

B.     Claims for Hostile Work Environment under Title VII

The Magistrate Judge concluded that Plaintiff could not establish a hostile work environment claim.  Specifically, the Magistrate Judge found that Plaintiff could not establish that he was harassed based on his race because none of alleged conduct was motivated by racial animus. (ECF No. 62 at 25.)  In this regard, the Magistrate Judge found that Plaintiff was unable

to show that he was treated differently than similarly-situated white coworkers on the basis of race. (Id.) Lastly, the Magistrate Judge found that the conduct alleged by Plaintiff was not sufficiently severe or pervasive to be actionable. (Id.) As a result, the Magistrate Judge recommended granting Defendant's Rule 56 motion on Plaintiff's claim for hostile work environment.

### 1. Plaintiff's Objections

Plaintiff objects to the Report and Recommendation asserting that the Magistrate Judge erroneously determined that he failed to establish that his alleged harassment was based on race. In support of this assertion, Plaintiff argues that he "provided evidence of a continuing pattern of harassment and hostile treatment spanning several years; in which there are numerous cited instances of disparate treatment between Plaintiff and persons outside his protected class (i[.]e[.]-seniority issues, disparate workloads, disparate provision of driver helpers, prohibited from going to the hospital, forced to drive faulty vehicle, numerous false allegations made against Plaintiff in discipline actions, and others previously discussed both in the opposing memorandum and herein)." (ECF No. 66 at 9.) Plaintiff further argues that he established the conduct he suffered was severe and pervasive because "[t]he record clearly reflects an ongoing pattern of severe and pervasive harassment; where Plaintiff was constantly treated differently, targeted, and forced to undergo rigorous grievances." (Id. at 10.)

### 2. The Court's Review

After careful review of the record, the court concurs in the Magistrate Judge's conclusion that Plaintiff has failed to establish a prima facie case of hostile work environment in violation of Title VII. The conduct Plaintiff characterizes as harassment simply does not rise to the level required by law to establish a hostile work environment. See E.E.O.C. v. Central Wholesalers, Inc., 573 F.3d 167, 176 (4th Cir. 2009) (finding alleged gender-based and race-based harassment

was sufficiently severe or pervasive where co-workers referred to women as bitches and a co-worker in a cubicle next to the plaintiff had Playboy items, watched pornography in front of her, had a pornographic screensaver, and placed a screwdriver in a Halloween decoration in a sexual manner and where co-workers used racial epithets, some directed at the plaintiff, and two co-workers "kept blue-colored mop-head dolls in their offices which they had hanging by nooses tied around the dolls' necks"); Spriggs v. Diamond Auto Glass, 242 F.3d 179 (4th Cir. 2001) (holding that supervisor's constant, even daily, use of racial epithets was sufficiently severe or pervasive to survive summary judgment); Amirmokri v. Baltimore Gas & Elec. Co., 60 F.3d 1126, 1131 (4th Cir. 1995) (finding the alleged harassment was sufficiently severe or pervasive because an Iranian plaintiff was called "names like 'the local terrorist,' a 'camel jockey' and 'the Emir of Waldorf'" on an almost daily basis).

In this regard, Plaintiff has failed to meet his burden of establishing that the alleged treatment he received was because of his race. Plaintiff has further failed to show that any alleged unwelcome conduct was objectively hostile or abusive. Based upon the foregoing, Plaintiff has failed to present sufficient evidence to raise a genuine issue of fact as to whether Defendant subjected Plaintiff to a hostile work environment based on his race in violation of Title VII. Therefore, Plaintiff's objections to the Magistrate Judge's Report and Recommendation are overruled. Accordingly, Defendant is entitled to summary judgment on Plaintiff's claim for hostile work environment.

C.     Claims for Retaliation under Title VII

In the Report and Recommendation, the Magistrate Judge concluded that Plaintiff alleged retaliation in relation to (1) being denied the benefits of his seniority, (2) his increased work load, (3) his terminations, (4) his written counseling, and (5) his delivery run being cut. (ECF No. 62

at 21.)  Upon her review of these claims, the Magistrate Judge recommended the following:  (1) granting summary judgment on Plaintiff's retaliation claim for the denial of the benefits of his seniority because he cannot show a causal connection between the denial of the benefits of his seniority and his complaints to Defendant; (2) granting summary judgment on Plaintiff's retaliation claim for excessive work load because the alleged adverse employment action occurred before any protected activity; (3) granting summary judgment on Plaintiff's retaliation claim for his terminations because he failed to establish that the proffered reasons for his terminations – insubordination and dishonesty – were pretext for retaliatory animus; (4) granting summary judgment on Plaintiff's retaliation claim for his written counseling because it did not constitute an adverse employment action; and (5) denying summary judgment on Plaintiff's retaliation claim for his delivery run being cut because five weeks is not too long a period of time to establish a causal connection.  (Id. at 21-23.)

   *1.  The Parties' Objections*

 Plaintiff argues that the Magistrate Judge erred in finding that Plaintiff could not establish a causal connection in his retaliation claim for denial of the benefits of his seniority. (ECF No. 66 at 5-6.)  Specifically, Plaintiff argues that the following evidence is more than sufficient to establish a claim for retaliation: "Plaintiff made the complaint in January 2011; was further subjected to retaliatory treatment a month or less later in February 2011 by denial of equal pay; complained of the disparate pay between him and the white shop steward; and approximately a month later was subjected to violence from his supervisor after complaining that a less senior driver (who is a white male) should be deferred work as provided in the CBA."  (Id. at 7.)

 Plaintiff further argues that the Magistrate Judge erred regarding his retaliation claim for his March 2011 termination because she failed to understand that "the evidence presented []

shows the retaliatory motives of Plaintiff's supervisors and the clear inferences that the supervisors knew the time entry was erroneous yet alleged the terminable offense of dishonesty." (Id. at 8.)

Lastly, Plaintiff argues that the Magistrate Judge erred in concluding that his written counseling did not constitute an adverse employment action for purposes of a retaliation claim. (Id.)  In support for this argument, Plaintiff asserts that the Magistrate Judge failed to consider the context and circumstances of the written counseling and its impact on Plaintiff's employment as required by Burlington.  In this case, Plaintiff had to grieve the written counseling, which resulted in excessive travel expenses and loss of leave time.  (Id. at 9.)

Defendant argues that the Magistrate Judge erred in denying summary judgment on Plaintiff's retaliation claim for cutting his delivery run because there is no evidence of either an adverse employment action against him or a causal connection between the filing of Plaintiff's lawsuit and the elimination of his delivery run.  (ECF No. 67 at 13.)  Defendant asserts that cutting Plaintiff's run was not an adverse employment action because it happened to white drivers and there was alternative work Plaintiff could have performed on the days his run was cut.  (Id. at 14.)  Defendant further asserts that Plaintiff cannot establish a causal connection between his filing this suit and the alleged adverse action because "nearly six weeks elapsed between the time [Plaintiff] filed this suit and the date his run was eliminated."  (Id. at 15 (citing, e.g., Horne v. Reznick Fedder & Silverman, 154 Fed. Appx. 361, 364 (4th Cir. 2005) ("[T]his court has previously noted that a lapse of two months between the protected activity and the adverse action is sufficiently long so as to weaken significantly the inference of causation.") (Internal quotation marks and citation omitted)).)  Based on the foregoing, Defendant requests that the court dismiss Plaintiff's remaining retaliation claim.

2.  *The Court's Review*

i.  **Plaintiff's Objection Regarding the Denial of the Benefits of His Seniority**

Plaintiff argues that the Magistrate Judge erred in denying his retaliation claim regarding the denial of the benefits of his seniority. Specifically, Plaintiff argues that there was a sufficient causal connection between his complaints about race discrimination in January 2011 and the denial of the benefits of his seniority on March 22, 2011. (See ECF No. 52-1 at 18-20.) The court agrees.

The Fourth Circuit Court of Appeals has held that "very little evidence of a causal connection is required to establish a prima facie case" and the closeness in time between the protected activity and an employer's adverse employment action is sufficient to satisfy the causation element of a prima facie retaliation case. See, e.g., Tinsley v. First Union Nat'l Bank, 155 F.3d 435, 443 (4th Cir. 1998); Williams v. Cerberonics, Inc., 871 F.2d 452 (4th Cir. 1989) (holding three-month time period between protected activity and termination sufficient to satisfy the causation element of the prima facie case of retaliation); Carter v. Ball, 33 F.3d 450 (4th Cir. 1994) (finding causal link between filing of retaliation complaints and the plaintiff's demotion five months later). Based on the foregoing, the court is persuaded that the two months temporal proximity of Plaintiff's complaint of race discrimination and the denial of the benefits of his seniority satisfies the causation element of a prima facie case of retaliation.

In response to Plaintiff's presentation of a prima facie case of retaliation, Defendant failed to proffer a legitimate, non-discriminatory reason for the alleged denial of the benefits of Plaintiff's seniority.[4] However, even assuming Defendant had carried its burden to produce a

---

[4] In its Rule 56 motion, Defendant relied entirely on the argument that Plaintiff's prima facie case failed because the temporal proximity was "insufficient to raise a credible inference of discrimination." (ECF No. 41-1 at 28.)

legitimate, non-discriminatory reason for Plaintiff's loss of the benefits of his seniority, Plaintiff has offered sufficient evidence to create a genuine dispute of fact as to whether Defendant retaliated against Plaintiff for complaining about race discrimination.  Accordingly, the court sustains Plaintiff's objection regarding his claim for retaliation based on the denial of the benefits of his seniority.

### ii.  **Plaintiff's Objection Regarding His March 2011 Termination**

Plaintiff argues that the Magistrate Judge erred in denying his retaliation claim regarding his March 2011 termination.  Plaintiff argues that there was a sufficient causal connection between his complaints about race discrimination in January 2011 and his termination on March 29, 2011.  Upon review, the court finds that this claim must fail for the same reasons that Plaintiff's discrimination claim regarding his terminations failed.  Specifically, Plaintiff has not produced sufficient evidence to meet his burden of proving that Defendant's asserted reason for terminating him on March 29, 2011 was merely pretextual.  As a result, the court overrules Plaintiff's objection and grants Defendant's Rule 56 motion on this retaliation claim.

### iii.  **Plaintiff's Objection Regarding His Written Counseling**

On the same day he filed this pending lawsuit, Plaintiff received a written counseling that was placed in this personnel record for hours in excess of nine and one-half.  (ECF Nos. 52 at 4, 52-1 at 81-83.)  Plaintiff argues that the Magistrate Judge erred in denying his retaliation claim on the basis that his written counseling was not an adverse employment action.  The court agrees.

A written counseling can be sufficiently adverse in that it "might . . . dissuade[ ] a reasonable worker from making or supporting a charge of discrimination [or retaliation]." Christmas v. N.C. Dep't of Admin, N.C., No. 5:09–CV–346–FL, 2011 WL 1870236, at *12 (M.D.N.C. May 16, 2011) (quoting Burlington, 548 U.S. at 68).  As for the causal connection, the written counseling occurred on the same day as he filed this lawsuit.  Thus, the temporal

proximity of Plaintiff's written counseling to the filing of his lawsuit satisfies the causation element of a prima facie case of retaliation.

Defendant has also proffered a legitimate, non-discriminatory reason for Plaintiff's written counseling: "it was issued related to a meeting to discuss his bulkhead door being open in transit . . . ."  Accordingly, the burden shifted to Plaintiff to show pretext and he did not put forward any evidence to show that Defendant's explanation was merely pretextual.  Therefore, the court overrules Plaintiff's objection regarding his claim for retaliation based on the receipt of a written counseling.

### iv. Defendant's Objection Regarding the Cutting of Plaintiff's Delivery Run

Defendant's objections focus on the last two elements of a prima facie case of retaliation. Upon review, and in the light most favorable to Plaintiff, the court is persuaded that the cutting of Plaintiff's delivery run constituted an adverse employment action.  See Boone v. Goldin, 178 F.3d 253, 256 (4th Cir. 1999) (A reassignment can "form the basis of a valid Title VII claim if the plaintiff can show that the reassignment had some significant detrimental effect.")  As for the causal connection, the evidence in the record is that Plaintiff's run was cut one month after he filed the complaint in this action.  With reference to its prior analysis, the court finds that one month temporal proximity between Plaintiff's complaint and the cutting of his delivery run satisfies the causation element of a prima facie case of retaliation.

In response to Plaintiff's presentation of a prima facie case of retaliation, Defendant failed to proffer a legitimate, non-discriminatory reason for the alleged cutting of Plaintiff's delivery run.[5]    However, even assuming Defendant had carried its burden to produce a

---

[5] Defendant did not make a substantive pretext argument and instead relied entirely on the argument that the cutting of Plaintiff's delivery run was neither an adverse employment action nor causally connected to the filing of his complaint in this court.  (See ECF No. 67 at 13-15.)

legitimate, non-discriminatory reason for the cutting of Plaintiff's delivery run; Plaintiff has offered sufficient evidence to create a genuine dispute of fact as to whether Defendant retaliated against Plaintiff for filing this pending action.  Accordingly, the court overrules Defendant's objection regarding Plaintiff's claim for retaliation based on the cutting of his delivery run.

## IV.    CONCLUSION

Upon careful consideration of the entire record, the court hereby **GRANTS IN PART AND DENIES IN PART** the motion for summary judgment of Defendant United Parcel Service, Inc.  (ECF No. 41.)  The court denies the motion for summary judgment as to Plaintiff's claims for (1) discrimination regarding his compensation for attending Union hearings, (2) retaliation based on the denial of the benefits of his seniority, and (3) retaliation for the cutting of his delivery run.  The court grants the motion for summary judgment as to (1) Plaintiff's claim for race discrimination against Defendant for denying him the benefits of his seniority, giving him excessive workloads without a helper, not allowing him to go to the hospital when he was dehydrated, forcing him to drive an unsafe vehicle, and terminating him in November 2010 and March 2011; (2) Plaintiff's retaliation claim against Defendant for giving him excessive workloads without a helper, for terminating him in November 2010 and March 2011, and for giving him written counseling; and (3) Plaintiff's claim for hostile work environment.

The court **ACCEPTS IN PART AND REJECTS IN PART** the Magistrate Judge's Report and Recommendation and incorporates it herein by reference.

**IT IS SO ORDERED.**

J. Michelle Childs

United States District Judge

March 26, 2014
Greenville, South Carolina